LAWSON v. LAWSON
(two cases).

Nos. 34202, 34194.   Oct. 16, 1951.

*236 P. 2d 683.*

Frank Nesbitt, Nelle Nesbitt, and Robert E. Nesbitt, Miami, for plaintiff in error, Rachel Crockett Lawson.

A. L. Commons and H. G. E. Beauchamp, Miami, for defendant in error, Hiley Lawson.

O'NEAL, J. This is a divorce action. Both parties appeal by separate petition in error. These two appeals, being from the same judgment, were, by order of this court, consolidated under No. 34202.

In No. 34202 plaintiff, Rachel Crockett Lawson, appeals from that part of the decree which awards Hiley Lawson judgment against her for $1,250, the purchase price of certain cows. Defendant, Hiley Lawson, appeals from that part of the decree which canceled a joint tenancy deed to 80 acres of land.

Plaintiff and defendant were married in Bentonville, Arkansas, on June 21, 1948. Of that marriage no children were born. At the date of the marriage plaintiff was about 49 years of age. She had been married once before. Her husband died and left her about $1,500 in insurance and property.

Defendant, Hiley Lawson, claimed to be 36 years old at the time of the marriage. He had been and was divorced from his first wife. He is the father of a married daughter 20 years of age

and a son 18 years of age. Plaintiff and defendant lived together as man and wife until July 5, 1948, a period of 14 days. About one-half of that time the parties spent in quarrelling concerning their property rights. Defendant, Hiley Lawson, claimed a prenuptial contract to the effect that a short time before the marriage, while defendant was in St. Louis, Missouri, plaintiff wrote him a letter in which she promised defendant that if he would return from St. Louis and marry plaintiff she would buy him a farm, and that the parties would pool all of their properties into a common fund to be owned jointly by them. After the death of her first husband, plaintiff owned and operated a business in or near Pitcher, Oklahoma. In this business plaintiff acquired some $12,650 which she had on deposit in the American National Bank at Baxter Springs, Kansas, and the First National Bank in Joplin, Missouri, about $9,000 in government bonds and her business enterprise. She held a note signed by one Ben Able for $250 and other personal property, including a 1941 Chevrolet automobile. In all, plaintiff had about $28,000 in assets.

The parties became acquainted, about one and one-half years before the marriage. Defendant became acquainted with plaintiff by way of dropping into her place of business on the way to and from his work. Defendant owned a small house located on leased land in Commerce worth about $1,000 with household furniture worth about $450 or $500, a Chevrolet worth about $1,275, a few cows and hogs, and about $800 in cash.

About June 10, 1948, some eleven days before the marriage, plaintiff, Rachel Crockett Lawson, then Rachel Crockett, purchased the land here involved, consisting of 80 acres, and being the north half of the northwest quarter of section 12, township 27 north, range 23 east, in Ottawa county, Oklahoma, for which she paid the sum of $10,000 out of her own individual funds; title was taken in her name, Rachel

Crockett. Plaintiff bought household furniture and paid therefor the sum of $407.44. She advanced defendant money from time to time in the total sum of about $201. She paid for repairs on defendant's truck $94.03, and also paid a repair bill on defendant's son's car, and bore all the household expenses.

Defendant bought seven hogs and 50 hens for which he paid $250 from his own funds. About a week before the marriage, defendant, Lawson, contracted to buy five cows and three calves. He agreed to pay therefore the sum of $1,250 and paid the sum of $200 in cash, leaving a balance of $1,050 unpaid. Plaintiff paid the balance of the purchase price of said cows, $1,050, by check drawn on her own personal bank account. Defendant asserts and testified that he repaid plaintiff said $1,050 in cash. Plaintiff denies this, and claims and testified that defendant did not pay her the $1,050, or any part thereof. The trial court allowed defendant judgment against plaintiff for this $1,250. It is from that part of the decree, plaintiff appeals.

The record shows that about July 1, 1948, some ten days after the marriage, defendant, Lawson, demanded that plaintiff make a joint tenancy deed conveying the 80 acres of land to plaintiff and defendant as joint tenants with right of survivorship. Plaintiff testified that defendant became angry with her and threatened to divorce her unless she complied with his demands. Plaintiff testified that for the purpose of averting trouble, and keeping her marriage intact, she caused a joint tenancy deed to be made and executed naming plaintiff and defendant as joint tenants. She testified that she executed this deed on July 1, 1948, at the abstract office of Nesbitt and Nesbitt, and left it there to be signed by defendant with directions to hold same until she called for it. This was denied by the clerk who made out the deed, who testified that plaintiff directed her to have the deed recorded after it was signed by defendant. Anyway, the deed was

placed of record before plaintiff called for it, and she was unable to get the deed returned to her.

Plaintiff testified that thereafter defendant demanded that plaintiff make out her bonds to them jointly; that she put her bank account in their names jointly, and that she destroy a will which she had formerly executed wherein her isister was beneficiary. Plaintiff refused, and testified that defendant called her all manner of vulgar names and applied vile and opprobrious epithets to her. She testified that defendant refused to sleep with her and demanded that she write him a check for $5,000 and gave her 20 minutes in which to do so or he would divorce her. This violent quarrelling continued until July 7, 1948 when plaintiff Rachel Crockett Lawson went to Miami and filed this divorce action.

The trial court issued a restraining order against defendant. Later, August 6, 1948, the court entered an order directing that defendant, Hiley Lawson, remove his property from the farm. Thereupon defendant and his mother went to the farm to remove his property, and while there another violent quarrel developed in which defendant cursed and abused plaintiff and threatened her with bodily harm.

At the trial some 400 or 500 pages of testimony was introduced. At the close of the evidence the trial court made extended findings of fact and conclusions of law, among which was finding of fact No. 4, as follows:

"The Court finds that there was no understanding and agreement wherein there was a meeting of minds upon the proposition that in (sic) condition that defendant would marry plaintiff these property discussions or plans would be carried out. That such discussions or promises were not made in consideration of marriage and that the marriage was not conditioned upon the promises. That all the discussions were to (sic) indefinite and uncertain to rise to the requirements of an agreement as well as not being intended as such

based upon a consideration of marriage."

The court further found (finding No. 10) that defendant's conduct was reprehensible, shocking to plaintiff, and amounted to extreme cruelty. The trial court further found:

"The Court finds that the defendant was guilty of durress (sic), deceit and undue influence towards the plaintiff in that he intended to first get the land deeded to him, then when that was done to get her money deposited in a joint account with him so he could check upon the same, her bonds reissued naming him as joint owner there on for his selfish, financial benefit without the intent to be a faithful husband and carry out the marriage obligations as hereinbefore stated. That when he was insisting that the deed be executed he made no reference to the transfer of the bank account and reissuing of the bonds but as soon as the deed was executed and recorded he then urged that said transfer of the money the change of the bonds making him co-owner which demands occurred about the 6th day of July. That he made such an attempt to get said bonds and cash deposits changed accompanied with such abuse, pressure, threats and threatened violence that the plaintiff learned of his intentions as hereinbefore stated, his lack of love, respect and sincere interest to carry out the marital duties and purposes as hereinbefore stated whereupon the plaintiff filed suit for divorce and to cancel said deed filed of record on July 2, 1948."

The decree canceled the joint tenancy deed and granted plaintiff a divorce. From that part of the decree canceling the joint tenancy deed and denying enforcement of the alleged prenuptial agreement, defendant appeals by a separate petition in error. In his petition in error defendant sets out 50 specifications of alleged error. He makes no attempt to present them separately. His principal contention is that the findings and judgment of the trial court is clearly against the weight of the evidence. Defendant earnestly contends that there was a valid prenuptial agreement between the parties in that while defendant was in St. Louis, Missouri, plaintiff wrote a letter in which she stated that if defendant would return from St. Louis and marry plaintiff, she would buy him a farm; that in response to said letter defendant did return from St. Louis; that plaintiff purchased the farm and plaintiff and defendant were subsequently married.

The record shows that plaintiff did write defendant a letter while he was in St. Louis but the letter had been lost or destroyed and could not be produced at the trial. Defendant and two witnesses, his son and a nephew, testified that they saw and read the letter, or that part thereof pertaining to the purchase of the farm, and that plaintiff had stated in the letter that if defendant would return from St. Louis and marry plaintiff she would buy him a farm. Plaintiff admitted that she wrote defendant a letter while he was in St. Louis but specifically denied that she made the statement in the letter testified to by defendant and his witnesses.

As stated above, the trial court found that there was no understanding and agreement wherein there was a meeting of the minds upon the proposition that on condition that defendant would marry plaintiff, their property discussions would be carried out; that such discussions or promises were not made in consideration of marriage, and that the marriage was not conditioned upon the promises; that all the discussions were too indefinite and uncertain to rise to the requirements of an agreement, as well as not being intended as such, or as being based upon a consideration of marriage. The trial court, based upon said findings, concluded as a matter of law that there was no valid binding prenuptial contract between the plaintiff and defendant.

The record, as a whole, shows that said findings of fact and conclusions of law are not clearly against the weight of the evidence but are in accord therewith.

In cause No. 34202, Rachel Crockett Lawson v. Hiley Lawson, the sole ques-

tion presented is whether the trial court erred in rendering judgment against plaintiff, Rachel Crockett Lawson, and in favor of defendant, Hiley Lawson, in the sum of $1,250, the purchase price of five cows and three calves, which were purchased and placed on the farm. The record conclusively shows that a short time after the farm in question was purchased, defendant, Hiley Lawson, contracted with one Boyd for the purchase of said cows and calves and agreed to pay therefor the sum of $1,250; at the time he entered into the contract defendant paid Boyd the sum of $200 in cash from his own funds as a part of the purchase price; that the five cows and three calves were subsequently delivered to defendant and placed on the farm. The five cows and three calves were never returned to defendant but were kept by plaintiff and appropriated to her own use and benefit. The record also conclusively shows that when the five cows and three calves were delivered, plaintiff issued her check drawn against her own individual bank account in the sum of $1,050 and said check was delivered to Boyd and was paid by the bank. The evidence as to whether defendant reimbursed plaintiff for this payment is in direct conflict.

Defendant asserts, and testified at the trial, that on or shortly after June 11, 1948, he fully repaid plaintiff said $1,050. As to where he obtained the money with which to make the $1,050 payment, defendant testified that he withdrew by check from his bank the sum of $568; that he sold four hogs to J. C. Jeffry for $150; that he sold a cow for $161.50 and a heifer for $69.50; that he had the balance at the home of his mother where he kept it in a little steel box. Defendant produced the canceled check for $568. That, of course, did not prove that he paid the $568, with other money, to plaintiff. But no other purpose for drawing the money out of the bank is apparent. Plaintiff positively denied that defendant paid her the $1,050 or any part thereof. With the evidence in such con-

flict, we cannot say, as a matter of law, that the findings and judgment of the trial court are clearly against the weight of the evidence.

The judgment of the trial court is affirmed.